**NATIONAL MEAT ASSOCIATION, et al., Plaintiffs,**

v.

**George DEUKMEJIAN, Governor of California, et al., Defendants.**

**No. CIV. S–82–194 RAR.**

United States District Court, E.D. California.

April 21, 1983.

Hershel Shanks, Glassie, Pewett, Dudley, Beebe & Shanks, Washington, D.C., Don T. Hibner, Jr., Sheppard, Mullin, Richter & Hampton, Los Angeles, Cal., for plaintiffs.

Roderick Walston, Deputy Atty. Gen., San Francisco, Cal., George Soares, Kahn, Soares & Conway, Hanford, Cal., for defendants.

Paul Haerle, Thelen, Marrin, Johnson & Bridges, San Francisco, Cal., for amici curiae.

## MEMORANDUM AND ORDER

RAMIREZ, District Judge.

At issue in this case is the constitutionality of the 1982 amendments to the California Beef Council Law, Cal. Food & Ag. Code § 64501, *et seq.* (West, 1967),[1] which required for the first time that out-of-state beef processors as well as in-state cattlemen support the California Beef Council. In March of 1982, plaintiffs, two nationwide associations of beef processors and eleven individual out-of-state beef processors[2], brought suit seeking declaratory and injunctive relief for alleged violations of the Commerce Clause and the Equal Protection Clause.[3] Upon completion of discovery, both parties moved for summary judgment, F.R.Civ.P. 56.

---

1. Unless specially indicated, all subsequent citations are to the California Food and Agriculture Code.

2. In May of 1982, pursuant to stipulation of counsel, another individual out-of-state beef processor was added as party plaintiff. On September 13, 1982, the Court granted the motion of Harris Farms, et al., individual in-state beef processor, for leave to participate as *amici curiae.*

3. Although the complaint also alleged violations of the Contract Clause and the Due Process Clause, those allegations do not warrant separate treatment at this time. The Contract Clause claim, as plaintiffs' counsel conceded at oral argument, has been abandoned. The Due Process claim, as conceded in plaintiffs' brief, pp. 22–24, is subsumed under the Commerce Clause claim.

The cross-motions of the respective parties came on specially for hearing before the undersigned on February 7, 1983. Hershel Shanks, Esq., of Glassie, Pewett, Dudley, Beebe & Shanks, appeared on behalf of plaintiffs; Roderick Walston, Deputy Attorney General, appeared on behalf of defendant; Paul Haerle, Esq., of Thelen, Marrin, Johnson & Bridges, appeared on behalf of *amici curiae*. Having carefully reflected upon the arguments of opposing counsel presented in their briefs and at oral argument, the Court hereby issues the following Memorandum and Order:

Subject matter jurisdiction is predicated upon the basis of federal question, 28 U.S.C. § 1331. As correctly stipulated by the parties, disposition of the case by summary judgment is appropriate, the issue being one of law and there being no material facts in dispute.

Turning to the merits of the case, the Court hereby grants defendants' cross-motion for summary judgment holding that the 1982 amendments are constitutional for the reasons as set forth below.

## I. THE STATUTORY SCHEME

In 1956 the California Legislature enacted the California Beef Council Law (CBCL) for the stated purpose of promoting consumption of beef. Responsibility for the statute's enforcement was vested in the Beef Council Director, § 64562, who was to be assisted by an advisory body called the California Beef Council. § 64591. The Director was charged with carrying out education, research, public information and advertising programs designed to increase the consumption of beef.[4] The statute provided that the Director's activities were to be funded solely by "head fees", fees imposed each time a head of cattle was sold or slaughtered. Although payment of the head fee was originally voluntary, in 1967 the California Legislature made payment of the fee mandatory. In 1978 the fee was increased from $0.10 per head to $0.25 per head. § 64691.

In 1982, the California Legislature passed two bills, A.B. 960 and A.B. 2631, which substantially amended the CBCL. The first bill, A.B. 960, was enacted on February 1, 1982 as an urgency statute in response to the "depressed conditions of the beef cattle industry, caused in part by consumer misconceptions regarding the role of red meat and animal fats in a basic diet". A.B. 960 § 10. The new law raised the head fee on California cattle from $0.25 to $1.00 per head and imposed, for the first time, mandatory assessments on out-of-state beef processors. An out-of-state beef processor was defined as the "last person, firm, or corporation who slaughters or otherwise processes beef which is shipped into the state". § 64711. Section 64713 distinguished between chilled carcass, boxed beef, and boned beef[5], and imposed thereon a per-pound assessment of $0.00200, $0.00233, and $0.00323, respectively.

A.B. 2631, enacted on July 2, 1982, further amended the CBCL reducing by twenty five percent (25%) the per pound assessments, called "mil assessments," on all out-of-state processed beef. As a result of A.B. 2631, the mil assessment on chilled carcass was reduced to $0.00150, on boxed beef to $0.00175, and on boned beef to $0.00242. It further provided that:

> [out-of-state beef processors] shall not be required to pay an amount in excess of the equivalent of one dollar ($1) per head. Any person who pays an assessment in excess of the equivalent of one dollar ($1) per head shall be entitled to a refund of the excess portion of the payment so long as the person demonstrates to the satisfaction of the director or his or her agent that a refund is warranted. The assessment provided in this section is intended

---

**4.** For a detailed description of the activities of the California Beef Council, see the Statement of Ms. Jane Anderson, Executive Manager of the California Beef Council.

**5.** These are terms of art within the beef industry. For example, Section 64712.5 defines "boxed beef" as "beef that is broken down or cut into primal and subprimal cuts, vacuum sealed in a barrier bag and placed in a shipping carton for shipment to a customer".

to be the equivalent of the [head] fee provided in Section 64691.

Section 64713.

## II. QUESTIONS PRESENTED

Plaintiffs contend that the mil assessments violates the Commerce Clause in two respects: first, there is an insufficient nexus between California and either the taxed activity (importation of processed beef) or the taxpayer (the out-of-state beef processor); second, the assessments discriminate against interstate commerce by imposing the fees on out-of-state beef processors but not on in-state beef processors and by charging an amount which in many instances exceeds the $1 head fee imposed on California cattle. Plaintiffs also argue that the composition of the California Beef Council violates the Equal Protection Clause inasmuch as out-of-state beef processors are irrationally and unjustifiably deprived of representation on that body. The Commerce Clause and Equal Protection Clause issues are addressed in turn.

## III. THE ASSESSMENTS DO NOT VIOLATE THE COMMERCE CLAUSE [6]

In deciding the merits of the Commerce Clause issues, the Court pays special heed to the caveat laid down by the Supreme Court:

[w]hen called upon to make the delicate adjustment between the national interest in free and open trade and the legitimate interest of the individual States in exercising their taxing powers, the Court has counseled that the result turns on the unique characteristics of the statute at issue and the particular circumstances in each case.

*Boston Stock Exch. v. State Tax Com'n,* 429 U.S. 318, 329, 97 S.Ct. 599, 606, 50 L.Ed.2d 514 (1977). This caveat has special application to the instant litigation because the special circumstances of this case set it

apart from many of its precedents. Thus, rather than mechanistically conforming to prior results, this Court endeavors to reach a decision consonant with both principles by taking full account of the unique characteristics of the statute at issue.

The most closely applicable standard by which the California statute must be measured is the one set forth in *Complete Auto Transit Inc. v. Brady,* 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977). In *Brady,* the court declared that a general state revenue tax is consistent with the Commerce Clause if it:

is applied to an activity with a substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State.

*Id.* at 279, 97 S.Ct. at 1079. Implicitly conceding that the California scheme is fairly apportioned and related to state-provided services, plaintiffs limit their attack to the other two prongs—the nexus and discrimination tests.

### a) *The Nexus Prong*

Plaintiffs argue that the California law fails the nexus test because it applies to plaintiffs which do not have a physical presence within the State of California.[7] In support of this proposition, plaintiffs cite two sales/use tax cases where the Supreme Court ruled unconstitutional state efforts to require out-of-state sellers to collect use taxes imposed on their own residents. *National Bellas Hess v. Dept. of Rev.,* 386 U.S. 753, 87 S.Ct. 1389, 18 L.Ed.2d 505 (1967); *Miller Bros. v. Maryland,* 347 U.S. 340, 74 S.Ct. 535, 98 L.Ed. 744 (1954). In *Bellas Hess* the only contacts between the Missouri mail order house and the State of Illinois were via the U.S. mails. In *Miller Bros.,* the Delaware department store's contacts with Maryland took the form of general

---

**6.** The Commerce Clause provides that "Congress shall have Power ... [t]o regulate Commerce ... among the several States". Art. I § 8, cl. 3.

**7.** The parties have stipulated that eight plaintiffs have sufficient contacts with California for

nexus purposes. However, plaintiffs contend that several do not. They cite as examples plaintiffs Litvak, National and Pepper which do nothing more than solicit orders by telephone and then ship beef by common carrier into California.

advertising and occasional truck deliveries. In both cases, the court found these contacts insufficient to meet the nexus test.

From these cases, plaintiffs derive a "physical presence" test which this Court refuses to adopt. Nowhere in these opinions is to be found a crude "physical presence" test. As the Supreme Court recently made clear, the nexus test is of quite a different character:

> [t]he relevant constitutional test to establish the requisite nexus for requiring an out-of-state seller to collect and pay the use tax is ... simply whether the facts demonstrate "some definite link, some minimum connection, between [the state and] the person ... it seeks to tax".

*National Geo. Soc. v. Cal. Bd. of Equal.,* 430 U.S. 551, 562, 97 S.Ct. 1386, 1393, 51 L.Ed.2d 631 (1977), *citing Miller Bros., supra,* 347 U.S. at 344–45, 74 S.Ct. at 538. Even *Miller Bros.* envisioned the possibility that a state could, consistent with the Commerce Clause, extend its taxing power extraterritorially:

> [V]isible territorial boundaries do not always establish the limits of a state's power or jurisdiction ... If there is some jurisdictional fact or event to serve as a conductor, the reach of a state's taxing power may be carried to objects of taxation beyond its border.

*Miller Bros., supra,* at 342–43, 74 S.Ct. at 537–38. Other cases have used different phrases to express the same concept. *Wisconsin v. J.C. Penney,* 311 U.S. 435, 444, 61 S.Ct. 246, 249, 85 L.Ed. 267 (1940), declares "the simple but controlling question is whether the state has given anything for which it can ask return". *Michelin Tire Corp. v. Wages,* 423 U.S. 276, 288, 96 S.Ct. 535, 542, 46 L.Ed.2d 495 (1976), speaks of

taxation as the *quid pro quo* for benefits actually conferred by the taxing state.

Embodied in all these formulations is the idea that the nexus requirement serves the purpose of assuring that only those taxpayers who receive benefits from the state are subject to its taxing power. In the context of a general revenue tax, such as a sales or use tax, the benefits conferred are those of "police and fire protection, the benefit of a trained workforce, and the 'advantages of a civilized society'". *Commonwealth Edison v. Montana,* 453 U.S. 609, 625, 101 S.Ct. 2946, 2958, 69 L.Ed.2d 884 (1981), citing *Exxon Corp. v. Wisconsin Dept. of Rev.,* 447 U.S. 207, 228, 100 S.Ct. 2109, 2122, 65 L.Ed.2d 66 (1980), quoting *Japan Line Ltd. v. City of Los Angeles,* 441 U.S. 434, 445, 99 S.Ct. 1813, 1819, 60 L.Ed.2d 336 (1979). Because only those who are physically present within a state benefit from general governmental services, it is axiomatic that the state's taxing power is limited accordingly.

The facts presented by the case at bar are of quite a different order. Here the benefits received are not limited to the "advantages of a civilized society". On the contrary, the plaintiff out-of-state beef processors directly benefit from programs which are specifically tailored to promoting their product.[8] In other words, the benefit which plaintiffs receive is the intangible but nonetheless substantial benefit of increased revenues, not the geographically limited benefit of general governmental services.

In this Court's view, the combination of direct receipt of benefits from a program specifically catering to plaintiffs' interests and plaintiffs' affirmative conduct in sending beef into the California market constitute the "affirmative link[s]" which the nexus test requires.[9]

---

**8.** Plaintiffs have stipulated to the fact that out-of-state beef processors benefit from the California Beef Council's programs. (Stip. # 27). Moreover, the benefit must be substantial; each of the plaintiffs ship a minimum of $5 million pounds of beef into California each year. (Stip. # 39).

**9.** The court notes that because the nexus test embodies the minimum contacts test of the Due Process Clause, it finds an analogy to the

exercise of long-arm jurisdiction useful. Just as less in the way of a physical presence by the defendant is required when the defendant's activities are related to the subject-matter of the lawsuit than when they are not, so too it is reasonable to require less in the way of a physical presence when the taxpayer receives benefits directly related to the taxpayer's conduct than when the taxpayer only receives general services.

## b) *The Discrimination Prong*

■ Discriminatory taxes, plaintiffs correctly contend, violate the Commerce Clause:

> One of the fundamental principles of the Commerce Clause jurisprudence is that no State, consistent with the Commerce Clause, may "impose a tax which discriminates against interstate commerce . . . by providing a direct commercial advantage to local business". *Northwestern States Portland Cement Co. v. Minnesota,* 358 U.S. 450, 458 [79 S.Ct. 357, 362, 3 L.Ed.2d 421] (1959).

*Maryland v. Louisiana,* 451 U.S. 725 at 754, 101 S.Ct. 2114 at 2133, 68 L.Ed.2d 576. Moreover, it is this Court's duty "to determine whether the statute under attack, whatever its name may be, will in its practical operation, work discrimination against commerce." *Id.,* at 756, 101 S.Ct. at 2134. On the other hand, so long as the tax burden on interstate commerce is no greater than on intrastate commerce, the tax may be upheld as nondiscriminatory. *Henneford v. Silas Mason Co.,* 300 U.S. 577, 57 S.Ct. 524, 81 L.Ed. 814 (1937). When two purportedly complementary taxes are at issue, the Court must evaluate the effect of the tax scheme as a whole. If the tax on interstate commerce fairly compensates for a tax on local commerce, it is consistent with the Commerce Clause. *Alaska v. Artic Maid,* 366 U.S. 199, 81 S.Ct. 929, 6 L.Ed.2d 227 (1961). With these principles in mind, the Court examines the California statute.

■ The circumstances surrounding the passage of the subject legislation demonstrates that the legislation was passed for the non-discriminatory purpose of increasing beef consumption, as opposed to the impermissible purpose of giving a competitive edge to the California cattle industry. At the same time that California imposed the assessment burden on out-of-state beef processors it increased four-fold the burden on the California industry. In July, apparently concerned that the mil assessments might result in out-of-state beef processors shouldering a disproportionate burden, the legislature reduced the mil assessment by twenty five percent (25%) and expressly provided that out-of-state beef processors shall not be required to pay an amount in excess of the equivalent of one dollar ($1.00) per head. The legislature chose not to reduce similarly the burden on the California industry.

The foregoing circumstances leave no room for doubt concerning California's intentions in regard to the 1982 amendments to the California Beef Council Law. California clearly intends that the mil assessments be equivalent to the head fees and that out-of-state beef processors pay no more than their fair share of the Beef Council's programs.

The absence of a discriminatory intent sets the California scheme apart from several cases on which plaintiffs strongly rely. *Halliburton Oil Well Cementing Co. v. Reily,* 373 U.S. 64, 83 S.Ct. 1201, 10 L.Ed.2d 202 (1963), overturned Louisiana's sales/use tax scheme because it was found to have been enacted for the purpose of (and with the effect of) favoring local users over out-of-state users similarly situated. New York's tax on the transfer of securities which had the purpose and the effect of channeling sales of securities into New York was struck down in *Boston Stock Exch. v. State Tax Com'n,* 429 U.S. 318, 319, 97 S.Ct. 599, 601, 50 L.Ed.2d 514 (1977).

Because the Court finds that the 1982 amendments were enacted for a non-discriminatory purpose, their only possible constitutional flaw arises from the amendments' effect on interstate commerce. Plaintiffs' first argument is that the statute discriminates against out-of-state beef processors by taxing them, but not their competitors, the in-state beef processors. This, plaintiffs argue, violates the principle of "equal treatment for in-state and out-of-

In light of the ruling that the combination of direct receipt of benefits and beef shipment into California satisfies the nexus requirement, the Court finds it unnecessary to rule on plain-

tiffs' argument that the handler provisions, § 64710, *et seq.,* violate the Due Process Clause.

state taxpayers similarly situated". *Halliburton Oil, supra,* 373 U.S. at 70, 83 S.Ct. at 1204. In other words, plaintiffs would have this Court rule that because the statute treats dissimilarly entities on the same level of the distribution chain, it is discriminatory. This reasoning, because it ignores two important qualifying principles, is rejected as overly simplistic.

First, the duty of this Court is to evaluate the statute in terms of its practical effect, not its formal structure, *Complete Auto, supra,* 430 U.S. at 279, 97 S.Ct. at 1079. The mere fact that the structure of the statute is such that the taxes are imposed on different levels of the distribution chain does not render the statute unconstitutional. *Henneford, supra,* (upheld Washington's sales/use tax scheme which imposed a use tax on consumers and a sales tax on sellers); *Arctic Maid, supra,* (upheld Alaska's tax on fishing vessels which was deemed complementary to its tax on local canneries). Instead, the statute may be struck down only if its practical effect is to give without justification, a competitive advantage to in-state processors.[10]

In the present case, the evidence demonstrates that out-of-state processors are on a par with their in-state competitors. Indeed, defendants have filed expert affidavits which indicate that out-of-state beef processors will not suffer an economic disadvantage relative to California beef processors.[11] This conclusion is derived from the fact that beef processors have greater market power than entities higher up the distribution chain and therefore out-of-state beef processors are capable of passing-back the assessment to entities higher up on the chain.

Plaintiffs have presented no rebuttal evidence to the expert affidavits presented by the defendants. Instead, plaintiffs argue that the laws of supply and demand preclude the cost shifting as described.[12] Accordingly, this Court believes that the preponderance of the evidence supports defendants' position and finds as a matter of fact that out-of-state beef processors are not economically disadvantaged *vis-a-vis* instate beef processors by virtue of the mil assessments.

Still another ground exists for rejecting plaintiffs' argument: the *Halliburton* equality principle explicitly recognizes that deviations from strict equality are constitutionally acceptable if adequately justified, as is true here.

*Halliburton* did not erect a *per se* rule against differing treatment of similarly situated taxpayers. Rather, it concluded that:

> the proper comparison on the basis of this record is between in-state and out-of-state manufacturer-users. And if this comparison discloses discriminatory effects, it would be ignored only by a *showing of adequate justification.*

*Id.,* 373 U.S. at 71, 83 S.Ct. at 1205 (emphasis added). Thus a statute which treats similarly situated taxpayers differently may nonetheless pass constitutional muster if the different treatment is adequately justified.

On the record now before the Court, the Court finds that the disparate treatment alleged by the plaintiffs is adequately justi-

---

**10.** Plaintiffs contend that having established that on its face the statute discriminates between in-state and out-of-state beef processors, the burden of proof shifts to defendants (Plaintiffs' Opening Brief, p. 39). This contention is rejected because it is contrary to the general rule that the burden of proof falls on plaintiffs, *Norton Co. v. Dept. of Rev.,* 340 U.S. 534, 537, 71 S.Ct. 377, 380, 95 L.Ed. 517 (1951), and plaintiffs have failed to cite any authority for the proposition that an exception exists in this type of case.

**11.** Declaration of Dr. James Youde, p. 2, ¶ 6, Defs.' Exh. # 9; Declaration of Mr. Philip Bauer, p. 1, ¶ 6, Defs.' Exh. # 10.

**12.** Plaintiffs do present evidence tending to show that the fees will not be *passed on* to consumers. Committee Statement on A.B. 960; Letter from Mr. William Staiger to Gov. Edmund Brown, Jr., dated January 22, 1982; Letter from Mr. George Strathearn to Gov. Edmund Brown, Jr., dated January 26, 1982. However, plaintiffs' evidence against a "pass-on" does not undermine defendant's evidence of a "pass-back."

fied. As to both California cattle and out-of-state cattle ultimately consumed in California, the tax is levied at the earliest feasible point in time. The earliest practicable point for California cattle to be assessed is at the time of sale or slaughter. The earliest practicable point for out-of-state cattle to be assessed is at the time of entry into the state. Prior to entry, it is impossible to predict the ultimate destination of the non-California cattle. (Stip. # 38). Moreover, it is reasonable to impose mil assessments on processed beef and head fees on live cattle. Head fees are wholly impracticable for processed beef because beef is typically commingled at the slaughterhouse and the identity of the original producer cannot be traced. (Stip. # 14). Likewise, assessing a head fee on live cattle is an administratively simpler means of generating revenue than mil assessments.

■ Having rejected plaintiffs' argument that the statute is unconstitutional because it places a tax burden on out-of-state beef processors, the Court now turns to plaintiffs remaining discrimination arguments. Plaintiffs first contend that the statute discriminates against interstate commerce because, in many cases, the assessment on out-of-state beef processors exceeds the equivalent of the $1.00 head fee imposed on California cattle. According to plaintiffs complicated calculations, the mil assessments on out-of-state carcass beef will exceed the equivalent of the $1.00 head fee whenever the original animal weighs more than 1,100 pounds. (Plaintiffs' Opening Brief, p. 58).

Defendants do not challenge the accuracy of plaintiffs' calculations, but argue that the problem is eliminated by Section 64713 which puts a ceiling on the mil assessments. Section 64713 reads in pertinent part as follows:

[P]ersons subject to this assessment shall not be required to pay an amount in excess of the equivalent of one dollar ($1) per head. Any person who pays an assessment in excess of the equivalent of one dollar ($1) per head shall be entitled to a refund of the excess portion of the payment as long as the person demonstrates to the satisfaction of the director or his or her agent that a refund is warranted. The assessment provided in this Section is intended to be the equivalent of the fee provided in Section 64691.

Plaintiffs would have this Court rule that Section 64713 is a sham because it imposes on out-of-state beef processors who purchase beef the impossible burden of determining the weight of the live animal from which the carcass came.[13] This the Court declines to do. By virtue of this Court's duty to read statutes in the light most favorable to their constitutionality, *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 348, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936), this Court interprets Section 64713 as permitting the director to require only that degree of proof which is reasonable under the circumstances. Thus understood, Section 64713 provides satisfactory protection against compulsory overpayments by out-of-state beef processors.[14]

The Court is also mindful of the fact that plaintiffs have tried to shift the focus of

---

**13.** The Court takes note of, but does not base its decision on, proposed regulations which make clear that the documentation burden imposed on out-of-state beef processors is a reasonable one. Proposed Section 2252(e)(1) eliminates the tracing problem by permitting out-of-state beef processors to compute their refund based on the average live weight and average yield of beef shipped into the state.

**14.** Plaintiffs present another argument which is an offshoot of their first and warrants like disposition. Plaintiffs argue that because over eight percent (8%) of the value of a single animal is contained in parts other than beef

carcass, out-of-state processors who purchase beef pay more than their fair share. In other words, it is discriminatory to impose the equivalent of a $0.92 head fee on local cattle and a $1.0 head fee on out-of-state beef. Again, because the statute does not preclude an appropriate reduction in the special case of an out-of-state beef processor who purchases beef, this Court is not prepared to invalidate the statute on this ground. The Court also notes that Section 2252(e)(3) of the proposed regulations permits out-of-state processors who purchase beef to reduce the total assessment by eight percent (8%).

inquiry from the level of comparing the burdens on in-state and out-of-state industries to that of individual processors. When the focus is properly returned to a comparison of the two industries, there is no doubt that Californians continue to shoulder more than their fair share of the costs of the Beef Council's programs. The parties have expressly stipulated to the fact that:

[A]t least half of the cattle in California change hands more than one time before slaughter. Consequently, more than one California Beef Council fee is usually paid on a given animal during its lifetime.

Stip. # 30. Thus, in practice the maximum fee on out-of-state beef corresponds to the minimum fee on California cattle.

The same conclusion is reached by comparing the percentage of out-of-state beef consumed in California with the percentage of Beef Council funds out-of-state beef processors are expected to generate. Sixty percent (60%) of the beef consumed in California is produced in other states (Stip. # 27). The 1982 amendments are expected to result in annual revenues of $5.3 million dollars (Stip. # 10). Since the pre-1982 head fees generated $800,000.00 dollars per year (Stip. # 26) and the rate was quadrupled, the new head fees can be expected to generate $3.2 million dollars annually. Thus, the mil assessments are expected to generate $2.1 million dollars, or forty percent (40%) of the total revenues. Since out-of-state processors account for sixty percent (60%) of the beef consumed in California but pay for only forty percent (40%) of the Beef Council's activities, it is undeniable that out-of-state processors are paying substantially less than their fair share of the load.

Plaintiffs present two other arguments which are likewise unpersuasive to the Court. The first contends that the California Beef Council may be improperly subsidizing the California Bureau of Livestock Identification. This amounts to a simple *ultra vires* argument which is not encompassed by the Commerce Clause. The second argument alleges that California beef produced from a totally integrated local operation may entirely escape Beef Council assessments. This argument is based on the following provision:

The fee which is required by Section 64691 shall be paid for each head of cattle which is slaughtered in the state unless it is specifically excepted by Section 64691. If the fee is not otherwise deducted from the seller as provided in Section 64691, it shall be paid by the *purchaser or slaughterer* and is due and payable in the manner provided in Section 64617.

Section 64692 (emphasis added). Plaintiffs interpret Section 64692 to mean that a fee is imposed only when cattle are sold at slaughter.

Plaintiffs' interpretation is contrary to the plain meaning of the statute and the interpretation of the state agency charged with its enforcement. The first sentence plainly contemplates payment of head fees at the time of slaughter and does not limit the payment requirement to animals sold at that time. The phrase "purchaser or slaughterer" in the second sentence explicitly communicates the idea that payment is required even if no sale takes place. Moreover, the Food and Agriculture Department, the agency responsible for this statute's enforcement, interprets this provision as requiring payment of a fee on every animal slaughtered in California regardless of whether the animal was sold before slaughter. Declaration of Mr. Hans Van Nes, Deputy Dir. of Cal.Dept. of Food & Agric., p. 2, ¶ 5, Defs'.Exh. # 6. For the above reasons, the Court rejects plaintiffs' interpretation as wholly lacking in merit.

## IV. THE EQUAL PROTECTION CLAUSE

 Plaintiffs argue that the fact that out-of-state beef processors are required to support the California Beef Council but are denied representation on the Council violates the Equal Protection Clause. While it is true that members of the Beef Council must be California residents, § 64591 and thus out-of-state beef processors may not serve on the Council, it does not follow that the rule violates the

Equal Protection Clause. Where, as here, the statute under attack does not adversely affect a suspect class of persons or a fundamental constitutional right, the statute must be deemed irrational before it may be ruled unconstitutional. *Williamson v. Lee Optical of Oklahoma,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955). Here the limitation of membership to California residents is clearly not irrational. The state legislature may have rationally concluded that the interests of out-of-state processors were already adequately represented by the statutory requirement that two of the twenty-one representatives be slaughterers. Moreover, the state legislature may have rationally decided that the administrative burden of seeking nominations from persons throughout the nation would be too heavy and therefore impractical.

For the reasons as stated herein, plaintiffs' motion for summary judgment is DENIED, and defendants' cross-motion for summary judgment is GRANTED.

IT IS SO ORDERED.

